Marie L. KASTEN, Plaintiff-Appellant,

v.

DORAL DENTAL USA, LLC,
Defendant-Respondent.

Supreme Court

*No. 2005AP995. Oral argument October 30, 2006.
—Decied June 22, 2007.*

2007 WI 76

(Also reported in 733 N.W.2d 300.)

600

601

602

603

For the plaintiff-appellant there were briefs by *Jane C. Schlicht, David A. McClurg,* and *Cook & Franke S.C.,* Milwaukee, and oral argument by *Jane C. Schlicht.*

For the defendant-respondent there was a brief by *K. Scott Wagner, Jacques C. Condon,* and *Hale & Wagner, S.C.,* Milwaukee, and oral argument by *K. Scott Wagner.*

¶ 1. LOUIS B. BUTLER, JR., J. This case concerns a limited liability company (LLC) member's request to inspect company records and is before us on certification from the court of appeals, pursuant to Wis. Stat. § (Rule) 809.61 (2003–04).[1] Marie Kasten, a non-

---

[1] All references are to the 2003–04 version of the statutes unless otherwise noted.

managing member of the former Doral Dental USA, LLC (Doral Dental), appeals from an order of the Ozaukee County Circuit Court, Honorable Tom R. Wolfgram, denying her request to inspect copies of company electronic mails (e-mails) and document drafts, and an order of summary judgment dismissing her action to compel Doral Dental to comply with her inspection requests.[2]

¶ 2. The circuit court denied Marie's request to inspect e-mails and document drafts on grounds that: (1) the e-mails and document drafts were neither "records" under Wis. Stat. § 183.0405(2) nor "Company documents" under Doral Dental's operating agreement and, therefore, were not subject to inspection; and (2) Doral Dental was unable to make available for inspection the requested items because they were stored on computer equipment that was no longer under Doral Dental's control.

¶ 3. The court of appeals certification asks us to address the following questions:

> 1) Whether Wis. Stat. § 183.0405, part of the Wisconsin Limited Liability Company Law (WLLCL), grants a broad right of member access to limited liability company records that, absent contrary lan-

---

[2] Doral Dental moved to supplement the record with materials offered to show that the issues raised in this appeal were moot. We ordered the motion held in abeyance pending our decision in this case. Copies of the materials submitted with this motion were first brought to the attention of the court when they were discussed in Doral Dental's initial brief and included in its appendix. We previously granted a motion of Marie Kasten to strike these materials from Doral Dental's brief and ordered Doral Dental to file a new brief-in-chief. We now deny Doral Dental's motion to supplement the record.

guage in the LLC operating agreement, embraces informal and nonfinancial records;

2) If the court determines that the statute grants members a broad inspection right, whether e-mails can be classified as "records" under Wis. Stat. § 183.0405(2) such that they are subject to a member's inspection.

We believe that the certification raises novel questions of statutory interpretation. However, the case before us does not present the precise questions that the certification raises.

¶ 4. Wisconsin Stat. § 183.0405(2) grants LLC members the right to inspect "any . . . limited liability company record," "unless otherwise provided in an operating agreement." Doral Dental's operating agreement gives members the right to inspect "Company documents" as well as "records." *See* Doral Dental Operating Agreement, §§ 6(k)(i) (providing right to inspect "all . . . records") and 8(e) (providing a right to inspect and copy "Company documents").

¶ 5. We conclude Doral Dental's operating agreement provides greater member rights of inspection than Wis. Stat. § 183.0405(2) because "Company documents" is a broader category of stored information than "records."[3] We therefore do not address whether "infor-

---

[3] A limited liability company (LLC) is required to keep at its principal place of business certain recorded information. Wis. Stat. § 183.0405(1). The types of information required to be kept by § 183.0405(1) are formal writings, such as records of each member's contribution to the LLC, tax returns, financial statements, copies of all operating agreements, and the like. Also required to be kept are the value of each member's contribution to the LLC, records of the times at which or the events upon which additional contributions are agreed to be made by each member, any events upon which the LLC is to be

mal" stored information and e-mails are "records" for purposes of Wis. Stat. § 183.0405(2).[4] Construing Doral Dental's operating agreement, we conclude that "Company documents" embraces document drafts and some company e-mails. We therefore conclude the circuit court's ruling to the contrary was in error.

¶ 6. As provided by Wis. Stat. § 183.0405 and Doral Dental's operating agreement, an LLC member may make an inspection only "upon reasonable request." We conclude that the reasonableness inquiry seeks to balance the statute's bias in favor of the member's right of inspection against the burden the specific request may place upon the company. We construe the language "upon reasonable request" to pertain to the financial burdens a request may place upon the company, as well as the timing and form of inspection.

¶ 7. We therefore reverse the circuit court's orders denying Marie Kasten's request to inspect e-mails and document drafts and dismissing her declaratory action on summary judgment. We remand this matter to the circuit court to reconsider Marie's request of July 2004 to inspect e-mails and document drafts in a manner consistent with this opinion.

I

¶ 8. Doral Dental was organized on April 29, 1996, by, among others, Craig Kasten (Craig), who was

---

dissolved and its business wound up, and other writings as required by the operating agreement. Wis. Stat. § 183.0405(1)(e). It is these other writings contained in the operating agreement that may exceed the scope of the other enumerated items contained within the statute.

[4] We disagree with the assumption underlying the court of appeals' certification that e-mails are always "informal" communications. *See infra*, ¶ 46.

then married to Marie Kasten (Marie). Doral Dental's primary business was creating and administering dental programs for health maintenance organizations (HMOs) and state governments. In the year 2000, Doral Dental reported revenues of $98.3 million. Marie asserts (and Doral Dental does not dispute) that much of Doral Dental's success was due to the utility of claims processing software developed by Craig. In early 2001, Craig and Marie divorced, with each taking a 23.13% interest in Doral Dental. MOA Investments, a company managed and part-owned by Doral Dental Chief Executive Officer Greg Borca, held 51.4% of Doral Dental, the lion's share of the interest in the company not held by Craig or Marie.

¶ 9. In February 2003 Marie began asserting her rights under the operating agreement and Wis. Stat. § 183.0405(2) to inspect and copy company records and documents. Marie states that she made these requests because negotiations had begun with potential buyers for the sale of Doral Dental, and she was concerned that such a transaction would adversely impact her interest in the company. Marie asserts that after reviewing documents produced in response to her initial inspection request, she "began to suspect that Doral's management was engaging in various actions adverse to her interests, such as the transfer, without adequate consideration of Doral's assets, including the [software] at the heart of the Company's success, to entities which Craig Kasten/MOA [Investments] owned, but she did not."

¶ 10. Marie asserts that several of the documents that Doral Dental produced in response to her inspection requests gave her cause for concern. Marie notes that a copy of a multi-part restructuring plan she obtained showed that Doral Dental was to be acquired

by Doral Systems, Inc., a company owned by Craig in which Marie had no interest, and eventually placed under the ownership of Athena Insurance Technologies Corporation, a company that would be held by Craig and MOA Investments. Marie further points to hand-written notes of an August 2001 meeting regarding a restructuring proposal that appeared to ask what "claims" Marie might have if the proposal were adopted. She alleges that a company e-mail[5] Craig sent to other Doral Dental executives and its attorney, stating that he "would rather sell Doral Dental for +$90 million and focus on growing the emerging companies[,]" indicates that Craig intended to steer future growth opportunities away from Doral Dental.

¶ 11. From February to October 2003, Marie made numerous requests of Doral Dental managers and their attorneys to inspect company records. Doral Dental fulfilled to Marie's satisfaction some of these requests but not others. In November 2003 Marie filed an action in Ozaukee County Circuit Court seeking an order pursuant to the operating agreement and Wis. Stat. § 183.0405 requiring Doral Dental to provide Marie with copies of documents not yet produced and to respond to her requests for information about Doral Dental's attempts to sell the company. Doral Dental states that prior to and during the ensuing litigation, it provided for Marie's inspection over thirteen boxes containing 35,000 documents.

¶ 12. In April 2004 some of Doral Dental's assets, including some computer equipment, were sold to

---

[5] Doral Dental produced some e-mails in response to Marie's inspection requests before ultimately denying further requests for e-mails on grounds Marie was not entitled to inspect them under Wis. Stat. § 183.0405(2) and the operating agreement.

609

DentaQuest Ventures (DQV) for approximately $95 million. Marie received $17.9 million from the sale.[6] In July 2004 Marie filed a motion to compel production of documents not yet provided for inspection by Doral Dental. The motion sought inspection of electronic files and document drafts first requested in two June 2004 letters to Doral Dental. Specifically, the motion requested the following: "For the years 2001 to the present, e-mails by/to/from Greg Borka, Craig Kasten or Lisa Sweeney"; "[a]ll internal communications between the officers or directors of Doral (e-mail, memo or correspondence) for the years 2001 to the present"; and "drafts of . . . sales documents and exhibits." Marie proposed that a computer expert provided at her expense "make a copy of the e-mail server."

¶ 13. Doral Dental opposed Marie's request to inspect e-mails and other electronically stored files, asserting that "all computers were sold," and that, regardless, the request was unreasonable under Wis. Stat. § 183.0405(2) and the operating agreement because it contained no limitation as to subject matter, and sought all e-mails over a three-year period. Doral Dental argued that the e-mails likely numbered in the hundreds of thousands and that it would have to review each e-mail to segregate those containing information to which Marie was not entitled, including attorney-client communications and personal communications not related to company business.

¶ 14. The circuit court held a hearing on July 30, 2004, on the motion to compel. In a bench decision, the circuit court concluded that e-mails were not "Company

---

[6] Following the sale, Doral Dental changed its name to DD Sale, LLC. For the sake of clarity, we refer to the company as Doral Dental throughout.

documents" under the operating agreement, and, further, that Doral Dental could not produce the e-mails because the computer equipment containing these documents was no longer in its possession:

> I guess I have the most problem with the e-mails. They're not documents or records. They're just communications. It's like notes or a telephone call. I mean it's — e-mails in my view are certainly entirely different, coupled with the fact that they don't have possession of the machines that are storing the electronic data.

The circuit court concluded that e-mails were not subject to inspection under the WLLCL or the operating agreement:

> First of all, I think the term "documents" is broader than the term "records." It may well encompass things which would not fall under the contemplation of the statute. And as such, I think that the agreement provides a broader basis upon which to request information than the statute itself does.

> I don't think that emails fall under the definition of documents. They just don't. They're communications. It's like asking someone to provide a summary of a telephone conversation. It may be memorialized electronically, but it clearly in my view is not a document, nor a draft that may be contained on those emails. They're simply not documents in my opinion as that was contemplated by the terms of the operating agreement.

The circuit court added:

> The other basis for my ruling as to the emails is that, quite frankly, I think they're out of the control of the company at this point. They're contained on machines that they don't have. There may be other ways to get those documents, but I don't think that I could

611

under anything compel Doral to go and get them. I don't think they have the ability to do that, nor do they have to go out and actually create something. I don't think that's their responsibility.

¶ 15. On August 2, 2004, Marie served a subpoena on DQV to obtain copies of the hard drives of the computers Doral Dental sold to DQV, and copies of back-up tapes containing e-mail and other electronic data produced through April 2, 2004, the date Doral Dental was sold to DQV. Marie and DQV reached an agreement whereby a computer expert would copy, at Marie's expense, the hard drives of computers used by Ronald Brummeyer and Lisa Sweeney, two DQV employees who had formerly worked for Doral Dental. The computer expert would then provide a written report of his findings for Marie and DQV, who would meet to confer regarding the production "of any such e-mail that may be relevant" to the action against Doral Dental.

¶ 16. In response, Doral Dental filed a motion for a protective order to prevent Marie from obtaining a copy of the electronic files from DQV. The circuit court denied Doral Dental's motion, concluding that Doral Dental no longer had an interest in documents contained on the computer equipment it had sold to DQV. Marie asserts that she has not obtained access to these files, however, "due to DQV's acquiescence to Defendant's insistence that Doral and its counsel be allowed to 'screen' the e-mails to determine what should be produced" to her. The circuit court formalized its ruling regarding the protective order, and its prior ruling denying Marie's request to obtain e-mails and drafts from Doral Dental directly, in a January 2005 written order.

¶ 17. In November 2004 Doral Dental filed a motion for summary judgment. Marie requested that a hearing on the motion be stayed because she had yet to obtain a copy of the electronic files from DQV. She also requested that the circuit court consider first whether certain correspondence between Doral Dental's managers and its attorneys was subject to the crime/fraud exception to the rule of attorney-client privilege. The circuit court denied Marie's motion for a stay. It then granted Doral Dental's motion for summary judgment, concluding that Doral Dental had "complied with [all requests for record inspection] that they were supposed to comply with."

¶ 18. Marie appealed to the court of appeals, and the court of appeals certified this case to address the scope of an LLC member's right of inspection, and whether this right encompasses the right to inspect e-mails and document drafts.

## II

■

¶ 19. This case requires us to examine the record inspection provisions of Wisconsin's Limited Liability Company Law (WLLCL) contained in Wis. Stat. § 183.0405, and the inspection provisions of the operating agreement of Doral Dental USA, LLC. Statutory interpretation and contract interpretation are matters of law subject to our independent review. *See Gottsacker v. Monnier,* 2005 WI 69, ¶ 13, 281 Wis. 2d 361, 697 N.W.2d 436.

■

¶ 20. This case was disposed of by the circuit court on summary judgment. We review a grant of summary judgment de novo, benefiting from the circuit

court's analysis, but applying the same methodology as the circuit court. *Dairyland Greyhound Park, Inc. v. Doyle,* 2006 WI 107, ¶ 15, 295 Wis. 2d 1, 719 N.W.2d 408.

## III

¶ 21. We begin by discussing the legal background of the WLLCL, and the applicable language of Wis. Stat. § 183.0405 and the operating agreement.

## A

¶ 22. We first considered Wisconsin's limited liability company statute two years ago in *Gottsacker.* There, we noted that the LLC is a hybrid business form that combines structural elements of the corporation and the partnership forms:

> From the partnership form, the LLC borrows characteristics of informality of organization and operation, internal governance by contract, direct participation by members in the company, and no taxation at the entity level. From the corporate form, the LLC borrows the characteristic of protection of members from investor-level liability.

*Gottsacker,* 281 Wis. 2d 361, ¶ 15.[7]

¶ 23. Wisconsin enacted its LLC statute, the Wisconsin Limited Liability Company Law (WLLCL), Chapter 183 of the state statutes, in 1993. *Id.,* ¶ 18. The drafters of the WLLCL borrowed concepts from the state partnership and corporation statutes,

---

[7] For additional discussion of the history and development of the LLC, see *Gottsacker v. Monnier,* 2005 WI 69, ¶¶ 13–17, 281 Wis. 2d 361, 697 N.W.2d 436.

Chapters 179 and 180 respectively, and the 1992 Proto-type Limited Liability Company Act, a product of an ABA Business Law Section subcommittee. *Id.*

¶ 24. The WLLCL contains an explicit statement of statutory purpose, which provides, in part, that "[i]t is the policy of this chapter to give maximum effect to the principle of freedom of contract and to the enforce-ability of operating agreements."[8] Wis. Stat. § 183.1302(1). *LLCs and LLPs: A Wisconsin Hand-book* § 1.11 (rev. ed. 1999), written by the members of the State Bar Business Law Committee who drafted the WLLCL, explains that the committee members sought to encourage LLCs to adopt their own rules by operat-ing agreement, while establishing default statutory rules that were simple enough to be used by "mom and pop" operations:

> [F]lexibility within the act and freedom of contract among members were the overriding goals [of the WLLCL]. . . . [T]he WLLCL incorporated flexible de-fault provisions that were designed to apply only if the operating agreement did not address the issue. . . .
>
> The paramount importance of flexibility and freedom of contract is evident throughout the WLLCL. All statu-tory provisions dealing with governance, membership, finance, dissolution and even fiduciary duties may be varied by the operating agreement. The drafters in-tended the operating agreement to give members the opportunity to establish the real law applicable to the LLC, even with the attendant risk to the unsophisti-cated investor.

---

[8] "Operating agreement" is defined within Chapter 183 as "an agreement in writing, if any, among all of the members as to the conduct of the business of a limited liability company and its relationships with its members." Wis. Stat. § 183.0102(16).

Notwithstanding this approach, it was also intended that the LLC form be suitable for the "mom and pop" grocery store. The drafters hoped that the LLC would provide an inexpensive and simple vehicle that did not require legal guidance at every step. Indeed, it was visualized that an operating agreement would not even be required for many LLCs or that the agreement would merely focus on the specifics of the business deal, permitting the statute to fill in the gaps. Thus, the default provisions were drafted with a common-sense business approach.[9]

¶ 25. The default rules concerning the rights of LLC members to inspect company records, and the duties of LLC managers to disclose information to members, are provided in Wis. Stat. § 183.0405. Subsection (1) of § 183.0405 sets forth the records a limited liability company must keep at its principal place of business. These include a list of members, and, if applicable, manager(s); copies of the articles of organization and all amendments thereto; copies of tax returns and financial statements; copies of all operating agreements, all amendments thereto, and operating agreements no longer in effect; the value of each member's contribution to the LLC; information concerning additional contributions to be made by each member; events upon which the LLC is to be dissolved; and any other writings required under the operating agreement.[10]

---

[9] We note that the drafters intended "that the LLC would provide an inexpensive and simple vehicle that did not require legal guidance at every step." Some LLCs may decide that the inspection rules of the WLLCL do not meet their needs and therefore adopt their own rules.

[10] Wisconsin Stat. § 183.0405(1) provides:

A limited liability company shall keep at its principal place of business all of the following:

¶ 26. Wisconsin Stat. § 183.0405(2) addresses the right of a member to inspect company records. It provides as follows: "Upon reasonable request, a member may, at the member's own expense, inspect and copy during ordinary business hours any limited liability company record required to be kept under sub. (1) and, unless otherwise provided in an operating agreement, any other limited liability company record, wherever the record is located." Chapter 183 does not define what constitutes an LLC "record," or indicate what constitutes a "reasonable request" for inspection.

(a) A list, kept in alphabetical order, of each past and present member and, if applicable, manager. The list shall include the full name and last-known mailing address of each member or manager, the date on which the person became a member or manager and the date, if applicable, on which the person ceased to be a member or manager.

(b) A copy of the articles of organization and all amendments to the articles.

(c) Copies of the limited liability company's federal, state and local income or franchise tax returns and financial statements, if any, for the 4 most recent years or, if such returns and statements are not prepared for any reason, copies of the information and statements provided to, or which should have been provided to, the members to enable them to prepare their federal, state and local income tax returns for the 4 most recent years.

(d) Copies of all operating agreements, all amendments to operating agreements and any operating agreements no longer in effect.

(e) Unless already set forth in an operating agreement, written records containing all of the following information:

1. The value of each member's contribution made to the limited liability company as determined under s. 183.0501(2).

2. Records of the times at which or the events upon which any additional contributions are agreed to be made by each member.

3. Any events upon which the limited liability company is to be dissolved and its business wound up.

4. Other writings as required by an operating agreement.

617

¶ 27. The WLLCL further addresses a member's right to company information by imposing a duty upon LLC managers to disclose "true and full information of all things affecting the [LLC] members to any member . . . upon reasonable request of the member or [the member's] legal representative." Wisconsin Stat. § 183.0405(3) provides in full:

> Members or, if the management of the limited liability company is vested in one or more managers, managers shall provide, to the extent that the circumstances render it just and reasonable, true and full information of all things affecting the members to any member or to the legal representative of any member upon reasonable request of the member or the legal representative.

¶ 28. Here, Doral Dental's operating agreement included two provisions regarding a member's right of inspection that were effective when Marie made the July 2004 inspection request that is the focus of this appeal.[11] Section 6(k)(i) of Doral Dental's operating agreement provided as follows:

> Books of Account. The manager shall maintain full and accurate books of account for the Company at the principal Company office. Each Member shall have access and the right to inspect and copy such books and all other Company records at all reasonable times.

Section 8(e) of the operating agreement provides:

---

[11] Doral Dental notes that its operating agreement was amended on June 1, 2005, to limit a member's right to inspect records to copies of income tax returns, copies of the current and past operating agreements and consent resolutions by members, and minutes of all meetings by members. We consider Marie's July 2004 request under the version of the operating agreement in effect at the time of her request.

*Company Books*. Upon reasonable request, each Member shall have the right, during ordinary business hours, to inspect and copy Company documents at the requesting Member's expense.

Doral Dental's operating agreement is silent on the company managers' duty to disclose information to Doral Dental members.

## B

¶ 29. Doral Dental contends that Wis. Stat. § 183.0405 should not be read to authorize members to make unlimited record requests that amount to "corporate proctology exams." Doral Dental argues that a member's right to inspect company records hinges on the reasonableness of the request, citing language of § 183.0405(2) that authorizes inspections "upon reasonable request." It asserts that the operating agreement similarly provides that Doral Dental managers need comply only with "reasonable" member requests to access records. It further notes that the requirement of § 183.0405(3) that the member/managers or managers of an LLC provide "true and full information of all things affecting the members to any member" is only "to the extent that the circumstances render it just and reasonable."

¶ 30. Doral Dental asserts that the types of documents described in Wis. Stat. § 183.0405(1) (member lists, tax returns, copies of the operating agreement, values of member contributions, dissolution events and "other writings as required by an operating agreement") are illustrative of those that we should consider to be "records" under § 183.0405(2). It further notes that subsection (2) does not reference e-mails or drafts of documents.

619

¶ 31. When construing a statute, we begin with the statutory language. *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "If the meaning of the statute is plain, we ordinarily stop the inquiry." *Id.* (citation omitted). Nevertheless, the scope, context and purpose of a statute are relevant to a plain-meaning interpretation of an unambiguous statute "as long as the scope, context, and purpose are ascertainable from the text and structure of the statute itself, rather than extrinsic sources, such as legislative history." *Id.,* ¶ 48. "A statute's purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-related statutes—that is, from its context or the structure of the statute as a coherent whole." *Id.,* ¶ 49. When a statute contains an explicit statement of legislative purpose or scope, we may consider it when ascertaining a statute's plain meaning. *Id.*

¶ 32. We begin by examining the record inspection provisions of two closely-related statutes, the corporation and partnership statutes. As we noted above, the LLC is a hybrid of these two business forms, and the drafters of Wisconsin's LLC statute borrowed freely from these established forms in crafting the WLLCL. *LLCs and LLPs: A Wisconsin Handbook,* § 1.16.

¶ 33. Wisconsin Stat. § 179.05(1) of Wisconsin's Uniform Limited Partnership Act enumerates the records a limited partnership must keep. Section 179.05(2) then provides that records under that subsection "are subject to inspection and copying at the reasonable request, and at the expense, of any partner during ordinary business hours." Section 179.05 does not include explicit requirements concerning the form, timing and purpose of the request. Like the WLLCL,

the limited partnership statute provides an interest holder with the right to inspect and copy records "at the reasonable request" of the interest holder. However, the limited partnership statute appears to restrict the right to inspect records to those enumerated by the statute, while the WLLCL contains no such limitation; LLC members may inspect and copy "any other LLC records" in addition to those enumerated in Wis. Stat. § 183.0405(1), "unless otherwise provided in an operating agreement." § 183.0405(2).

¶ 34. The corporation inspection statute, Wis. Stat. § 180.1602(2)(b), contains numerous limitations on shareholder access to corporate records, including requirements that the requests be made "in good faith and for a proper purpose," and that the request identify "with reasonable particularity" the records sought and the purpose of the request. Moreover, an inspection request must target only those records that "are directly connected with [the requester's] purpose." *See* § 180.1602(2)(b)3.-5.[12]

---

[12] Wisconsin Stat. § 180.1602 provides, in part:

(2)(a) Except as provided in par. (c) and sub. (4), a shareholder of a corporation who satisfies par. (b) may inspect and copy, during regular business hours at a reasonable location specified by the corporation, any of the following records of the corporation:

1. Excerpts from any minutes or records that the corporation is required to keep as permanent records under s. 180.1601(1).

2. Accounting records of the corporation.

3. The record of shareholders, except as provided in s. 180.1603(3).

(b) To inspect and copy any of the records under par. (a), the shareholder must satisfy all of the following requirements:

1. The shareholder has been a shareholder of the corporation for at least 6 months before his or her demand under subd. 2, or the shareholder holds at least 5% of the outstanding shares of the corporation.

¶ 35. Doral Dental urges us to look to the corporation inspection statute for guidance in interpreting Wis. Stat. § 183.0405. Doral Dental asserts that the explicit limitations on a shareholder's record inspection demand contained in the corporation statute strike a proper balance between the shareholder's legitimate need for information and the corporation's need to be protected from repeated, harassing record requests. It argues that language limiting a member's right to inspect records to requests that are "reasonable" establishes a similar balance in the LLC context between the

2. The shareholder gives the corporation written notice that complies with s. 180.0141 of his or her demand at least 5 business days before the date on which he or she wishes to inspect and copy the records.

3. The shareholder's demand is made in good faith and for a proper purpose.

4. The shareholder describes with reasonable particularity his or her purpose and the records that he or she desires to inspect.

5. The records are directly connected with his or her purpose.

(c) A person that has delivered the resolution under s. 180.1150(4) may, by giving written notice to the resident domestic corporation, as defined in s. 180.1150(1)(c), that complies with s. 180.0141, inspect and copy the record of shareholders of the resident domestic corporation, in person or by agent or attorney at any reasonable time for the purpose of communicating with the shareholders in connection with the special shareholders' meeting under s. 180.1150(5).

(3) The rights under this section may not be abolished or limited by the domestic corporation's articles of incorporation or bylaws.

(4) This section does not affect any of the following:

(a) The right of a shareholder to inspect records under s. 180.0720 or, if the shareholder is in litigation with the corporation, to the same extent as any other litigant.

(b) The power of a court, independently of this chapter, to compel the production of corporate records for examination.

inspection right of members and the need to protect companies from improper record requests.

¶ 36. However, consideration of the WLLCL's inspection provision in light of its corporate counterpart only serves to highlight the differences between the statutes. The corporation statute includes a host of explicit requirements not provided in the WLLCL's inspection statute, including that the requester either hold at least five percent of the company's shares or be a shareholder for at least six months prior to the request; that the request be made in writing, and at least five days prior to the desired inspection date; and that the records requested be directly connected to the purpose of the request. Wis. Stat. § 180.1602(2)(b).

¶ 37. Additionally, the corporation statute limits shareholder inspection rights to the types of records enumerated in Wis. Stat. § 180.1602(2)(a). The WLLCL, by contrast, contains no explicit restrictions on the time and place of inspection, and allows access to "any . . . limited liability company record," unless otherwise provided by the operating agreement. Wis. Stat. § 183.0405(2). Indeed, the transparency of the business form established by the default rules of the WLLCL is further illustrated by its unique requirement that managers provide "true and full information of all things affecting the members to any member . . . upon reasonable request of the member." Wis. Stat. § 183.0405(3). There is no analogue to this provision in the corporation statute.

¶ 38. By the plain language of Wis. Stat. § 183.0405(2), an LLC member may inspect anything that is a "record," and access will be granted to the member "upon reasonable request." Thus, the scope of a member's right of inspection under the default inspection provisions of § 183.0405(2) is exceptionally

623

broad, and hinges on what constitutes an LLC "record," and the degree and kind of restrictions on access that "upon reasonable request" may impose.

¶ 39. This interpretation is consistent with the purposes of simplicity and freedom of contract that are at the heart of the WLLCL. As we said in *Gottsacker*, the overriding goal of the WLLCL was "to create a business entity providing limited liability, flow-through taxation, and simplicity."[13] *Gottsacker*, 281 Wis. 2d 361, ¶ 19 (citation omitted). *See LLCs and LLPs: A Wisconsin Handbook* at § 1.11 ("[I]t was . . . intended that the LLC form be suitable for the 'mom and pop' grocery store. . . . Indeed, it was visualized that an operating agreement would not even be required for many LLCs."); Wis. Stat. § 183.1302(1) ("It is the policy of [the WLLCL] to give maximum effect to the principle of freedom of contract and to the enforceability of operating agreements.").

¶ 40. The default inspection rules provided in Wis. Stat. § 183.0405(2) were designed for less sophisticated companies that would be less likely to craft their own inspection rules in an operating agreement. Accordingly, the default provisions do not include cumbersome restrictions on records access that might burden such businesses. Conversely, the statutory scheme envisions that larger, more sophisticated companies with multiple members may chose to adopt inspection rules that may be more suited to their

---

[13] In *Gottsacker*, we recognized that the drafters of the WLLCL hoped that a Wisconsin LLC would provide an inexpensive vehicle that did not require legal counsel at every step, and that a Wisconsin LLC be treated as a partnership for tax purposes. *Gottsacker*, 281 Wis. 2d 361, ¶ 19.

needs, and the statute permits them to do so by the operating agreement.[14]

¶ 41. In this case, we note that the inspection provisions of the operating agreement are not identical to those of Wis. Stat. § 183.0405(2). While the operating agreement, like the statute, provides for inspection "upon reasonable request," the agreement provides members a right to inspect "documents" as well as "records." We therefore examine first whether, under language of the operating agreement, informal stored information, document drafts and e-mails may be "records" and/or "documents."

## C

¶ 42. As noted above, section 6(k)(i) of Doral Dental's operating agreement provides that "[e]ach Member shall have access and the right to inspect and copy such books and all other Company records at all reasonable times." Later, section 8(e) provides as follows: "Upon reasonable request, each Member shall have the right, during ordinary business hours, to inspect and copy Company documents at the requesting Member's expense."

¶ 43. The WLLCL does not define "record." Likewise, Doral Dental's operating agreement does not define "record" or "Company document."[15]

---

[14] Under the WLLCL, larger, more sophisticated LLCs are free to adopt more restrictive inspection rules that may incorporate features of the corporation inspection statute. Of course, the statutory scheme also permits LLCs to adopt inspection rules that are less restrictive than the default statutory rules, as Doral Dental did here by its operating agreement.

[15] We note that items an LLC must keep "at its principal place of business" under § 183.0405(1) are referred to in sub-

¶ 44. We therefore consult a dictionary to ascertain the common meaning of these words. *See State v. Denis L.R.*, 2005 WI 110, ¶ 40, 283 Wis. 2d 358, 699 N.W.2d 154. *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) defines "record" as "an authentic official copy of a document deposited with a legally designated officer," *id.* at 1040, and "document" as "a writing conveying information" or "a computer file containing information input by a computer user and usually created with an application (as a word processor)." *Id.* at 368. *Merriam-Webster's* definition of "record"—"an authentic official copy of a document"—indicates that a "document" is a broader category of stored information than "record," capturing all "records" and many types of stored information that would not be "records." However, section 8(e) of the operating agreement does not permit inspection of "documents," but rather "Company documents." We conclude that Doral Dental's operating agreement, by permitting inspection of "Company documents" as well as the statutorily-provided "records," affords access to more forms of stored information than the default inspection provisions of the WLLCL. Thus, we do not address whether the right to access "any other records" under Wis. Stat. § 183.0405(2) embraces

section (2) as "records." *See* § 183.0405(2) ("a member may . . . inspect and copy . . . any limited liability company record required to be kept under sub. (1)"). As noted earlier, *supra,* ¶ 25, these items include a list of members, tax returns, and other items that record financial and organizational essentials of an LLC. However, while subsection (2) indicates recordings of these essentials are "records," it does not limit "records" to only these types of items. Likewise, the context in which the term "Company documents" appears in the operating agreement is of little assistance to us.

"informal and nonfinancial records," and/or e-mails and document drafts. We examine instead what constitutes a "Company document" subject to member inspection under Doral Dental's operating agreement, and, specifically, whether e-mails and document drafts may be "Company documents."

¶ 45. The circuit court concluded that e-mails and document drafts were categorically neither "records" nor "Company documents" and therefore were not subject to inspection. The circuit court reasoned that e-mail was a "communication," similar to a telephone call, and not a "record" or a "Company document."

¶ 46. We agree with the circuit court that some e-mails may properly be categorized as private communications between the sender and the receiver that are neither "Company documents" nor "records." Nevertheless, the circuit court's view fails to account for the ubiquity of e-mail in today's business world and the many purposes for which e-mail is now used. E-mail is a primary tool of modern business communication. One market research firm estimates that in 2006, there were 128.7 million business e-mail users, and that the typical business user sent and received 600 e-mails per week. David Ferris, *Industry Statistics* (2006), http://www.ferris.com/research-library/industry-statistics.

¶ 47. For most businesses, e-mail has all but replaced hardcopy correspondence and memoranda. Michael McCrystal, William C. Gleisner III, & Michael Kuborn, *Coping with the Legal Perils of Employee Email,* Wisconsin Lawyer, March 1999, at 48 ("Email is rapidly becoming a vehicle for intra-office communication that is as important, if not more important, than 'snail' mail and hardcopy memoranda."). A categorical

627

holding that e-mail is never a "Company document" under Wis. Stat. § 183.0405(2) would be blind to the day-to-day volume of e-mail in the modern business setting and the business-related purposes for which e-mail is used. Moreover, such a holding would frustrate the purposes of the inspection statute by encouraging LLC managers to conduct business via e-mail to avoid the scrutiny of non-managing members.

¶ 48. However, without addressing the question of whether all e-mail created and stored on company equipment is necessarily a "document," we do not believe that all of the requested e-mails in this case are necessarily "*Company* documents" subject to Marie's inspection under the Doral Dental operating agreement. When construing the language of a contract, we give meaning to every word, avoiding constructions "which render[] portions of a contract meaningless, inexplicable or mere surplusage." *Goebel v. First Fed. Sav. and Loan Ass'n of Racine*, 83 Wis. 2d 668, 680, 266 N.W.2d 352 (1978). We construe "Company" to limit "documents" available for inspection to those relating to the business. Stored information of a strictly personal or social nature, such as personal e-mails that do not touch upon business matters, are not "Company documents" subject to inspection under the operating agreement.[16] Subject to this limitation, we therefore conclude that information that is stored as e-mail may be a

---

[16] Our determination that e-mails that are strictly personal or social in nature are not "Company documents" is based on a plain meaning interpretation of the operating agreement. We note that other factors not contained in the record before us may be relevant to a determination of what constitutes "Company documents," including whether Doral Dental had in effect a company policy regarding the use of e-mail, employment

"Company document" subject to a member's reasonable inspection request under the operating agreement. Because the circuit court concluded information that is stored as e-mail was categorically not a "Company document," its decision was in error. *See State v. Hutnick,* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968).

¶ 49. With regard to Marie's request to inspect company document drafts, we conclude that such drafts are clearly "a writing conveying information," *Merriam-Webster's* definition of "document." *Merriam-Webster's New Collegiate Dictionary* at 368. Accordingly, under the language of the operating agreement, document drafts are subject to inspection upon a member's reasonable request. We do not address here whether a document draft may be a "record" within the meaning of Wis. Stat. § 183.0405(2).

¶ 50. We have thus concluded that the operating agreement provides member access to business-related company e-mails and document drafts. This right is subject to "upon reasonable request" language contained in Wis. Stat. § 183.0405(2) and the operating agreement, which we consider in the next section. We pause first, however, to consider what impact, if any, the requirement of § 183.0405(3) that LLC managers provide "information" about "all things affecting the members" may have upon a request to inspect LLC records or documents.

¶ 51. Wisconsin Stat. § 183.0405(3) is not a "record" or "document" inspection statute per se. Rather, it imposes a duty upon managers to provide,

agreements addressing the ownership of e-mail with those employees whose e-mails were sought, and the terms of these policies and/or agreements.

"upon reasonable request," "true and full information of all things affecting the members," whether or not that information is recorded and stored as a "record" or a "document." § 183.0405(3). It establishes a member right to "true and full information," without regard to whether that information is recorded and stored as a "record" or "document." However, the requesting member is entitled under this section only to information "affecting the members." § 183.0405(3). Managers must provide such information to members "to the extent that the circumstances render [the provision of the information] just and reasonable." *Id.*

¶ 52. We construe the phrase "all things affecting the members" to mean all things affecting the requesting member's financial interest in the company. To the extent that records and documents requested by Marie under Wis. Stat. § 183.0405(2) contain information affecting her financial interest in the company, subsection (3) requires that the information contained in the records or documents be furnished to Marie.

¶ 53. Doral Dental contends that Wis. Stat. § 183.0405(3) limits the scope of records and documents subject to inspection under § 183.0405(2) and sections 6(k)(i) and 8(e) of the operating agreement to records and/or documents that "affect" the member's interest. However, nothing in the text of subsections (2) and (3) suggests that the two should be read to limit each other. Had the legislature intended to limit the scope of inspection provision to only those "records" that *affect* a member's membership interest, it would have done so in the text of the inspection provision.

## D

¶ 54. Earlier, we rejected Doral Dental's argument that language in Wis. Stat. § 183.0405 and the operating agreement providing access to LLC records only "upon reasonable request" imposed on LLC members the specific limitations on inspection rights set forth in the corporation statute. *See supra,* ¶ 34–37. We return now to this language to determine what constitutes a "reasonable request" with respect to LLC member inspection rights.

¶ 55. For her part, Marie argues that "upon reasonable request" does not relate to the scope of records subject to inspection, only to the timing of the inspection and the form of production requested. Marie asserts that where the legislature has provided access to records "upon reasonable request," it has not restricted the scope of the records requested, citing the inspection provisions of the limited partnership statute, Wis. Stat. § 179.05. Marie notes that § 179.05(2) already limits a partner's inspection right to records required to be kept under § 179.05(1), so the limited partnership statute's guarantee of access "upon reasonable request" in that statute applies only to time and manner of inspection. Marie reasons that because § 179.05(2) uses the phrase "upon reasonable request" in a very similar context, we should construe the phrase as having the same meaning in Wis. Stat. § 183.0405.

¶ 56. Doral Dental contends that "upon reasonable request" applies to more than just the timing and form of the inspection, but also to the breadth of the request, to whether the request is tied to the concerns of the requester and to the types of records or documents requested. Doral Dental argues that the reasonableness requirement attempts to strike a balance

between member access to information and the LLC's ability to conduct its business. Doral Dental asserts that the "upon reasonable request" language prohibits requests that are not reasonably limited by the date the requested items were created, by the place the items may be stored, and/or by the reason for the request. Doral Dental also argues the reasonableness language should be read to limit the right of inspection to certain kinds of formal records, such as tax returns, financial records and sales tax documents.

¶ 57. We disagree with Doral Dental that "upon reasonable request" language limits the types of records that are subject to inspection. The statutory language unambiguously provides members with the right to inspect "any limited liability company record required to be kept under sub. (1) and, unless otherwise provided in an operating agreement, any other limited liability company record." Wis. Stat. § 183.0405(2) (emphasis added).

¶ 58. But we also disagree with Marie that the phrase "upon reasonable request" in Wis. Stat. § 183.0405(2) should be interpreted in the same manner in which it is used in the inspection provisions of the partnership statute, Wis. Stat. § 179.05(2). The partnership statute differs from the LLC statute in that it authorizes inspection of only certain specified records, see § 179.05(1), while § 183.0405(2) permits inspection of all records the LLC must keep under § 183.0405(1) and "any other limited liability company record." Because the right to inspect records under the partnership statute is already limited to only certain, specified records, the "reasonableness" of such a request would not encompass the types or scope of records sought by the request. By contrast, an inspection request under the LLC statute is not limited to specified

records, as LLC members may inspect any records (or, as here, even more items under the terms of the operating agreement).

¶ 59. Chapter 183 does not explicitly address whether the reasonableness language encompasses the breadth of the request or whether it applies only to the timing and form of the request. Because neither the language of Wis. Stat. § 183.0405(2) nor the context in which it appears provides any guidance as to the factors that may be relevant to whether an inspection request is "reasonable," we conclude the provision is ambiguous. We therefore turn to extrinsic sources to ascertain the meaning of "upon reasonable request" within the context of Wis. Stat. § 183.0405(2).

¶ 60. The legislative history of the WLLCL contains no discussion of the LLC inspection statute in general terms, much less any specific consideration of "upon reasonable request." *The Wisconsin Handbook to LLCs,* authored by the drafters of the WLLCL, is similarly mute. Moreover, no Wisconsin cases have interpreted the inspection provision of the WLLCL, and no cases from other jurisdictions have interpreted similar "reasonable request" language contained in LLC inspection provisions of other states.

¶ 61. However, other state inspection statutes provide insight into the meaning of Wisconsin's inspection provisions and the phrase "upon reasonable request." As noted, the LLC is a new business form, and most state LLC statutes, including Wisconsin's, were adopted between 1990 and 1995. 1 Larry E. Ribstein and Robert R. Keatinge, *Ribstein and Keatinge on LLCs,* § 1:2 (2d ed. 1996). Because the drafters consulted other LLC statutes when drafting the WLLCL, *see Gottsacker,* 281 Wis. 2d 361, ¶ 18 n. 5, differences

633

between the WLLCL and other state LLC statutes suggest choices the drafters made that may be relevant to statutory meaning.

¶ 62. One leading treatise has surveyed the various state LLC record inspection statutes and has identified four general approaches to LLC record inspection. *Ribstein and Keatinge on LLCs,* App. 9–3. It notes that in approximately half of the states, LLC members are permitted to inspect records only "upon demand for a proper purpose," *id.,* a requirement familiar to corporation law and included in Wisconsin's corporation statute. *See* Wis. Stat. § 180.1602(2)(b)3.

¶ 63. Other states, including Wisconsin, do not include an explicit "proper purpose" requirement, but require, in some fashion, that the inspection request be "reasonable."[17] *Ribstein and Keatinge on LLCs,* App. 9–3. Ribstein and Keatinge note that reasonableness limitations on LLC member inspection rights contained in many state LLC statutes are not as restrictive as limits on corporation shareholder inspection rights, and

---

[17] These jurisdictions include Arkansas, Connecticut, the District of Columbia, Georgia, Iowa, Idaho, Illinois, Kansas, Louisiana, Michigan, North Dakota, New Mexico, Nevada, Oklahoma, Oregon, Rhode Island, Tennessee, Utah, Virginia, Wisconsin, and the American territories. 1 Larry E. Ribstein and Robert R. Keatinge, *Ribstein and Keatinge on LLCs,* App. 9–3 (2d ed. 1996). Indiana, which Ribstein and Keatinge list among those states without a "proper purpose" requirement, amended their inspection statute to require a showing of a "proper purpose," among other restrictions. Ind. Stat. 53–625 (2006). Minnesota, also included on this list by Ribstein and Keatinge, does not require that a member show that his or her request is made for a "proper purpose" when seeking to inspect certain records that the LLC must keep by law, but does require a showing of "proper purpose" when the request is for any LLC record not required to be kept by statute.

634

as a result, "courts may be more lenient in allowing inspection in LLCs than in publicly held corporations." *Ribstein and Keatinge on LLCs,* App. 9–3. The authors explain that corporation inspection and disclosure statutes are more restrictive and detailed than those of LLCs and partnerships "because of the need [for corporations] to spell out ground rules that both avoid unreasonable and costly requests by thousands of shareholders and ensure disclosure by managers who are remote from the owners." *Id.* at § 9:10.

¶ 64. Nine jurisdictions, Alabama, Hawaii, Illinois, Montana, South Carolina, South Dakota, Vermont, the Virgin Islands, and West Virginia, have adopted the Uniform Limited Liability Company Act (ULLCA), which contains a member right to inspect records that includes no language requiring that a request be "reasonable" or made for a "proper purpose." Finally, two states, Nebraska and Wyoming, have LLC statutes that do not include an inspection provision. *Id.*

¶ 65. Those states that have adopted "proper purpose" language permit LLC managers to deny an inspection request based on the member's intent, regardless of whether the records sought would otherwise be available for member inspection. Some commentators have argued that states that permit inspections without the showing of a "proper purpose" may be inviting record inspections that are contrary to the company's financial health. *See* J. William Callison and Allan W. Vestal, *"They've Created a Lamb with Mandibles of Death": Secrecy, Disclosure, and Fiduciary Duties in Limited Liability Firms,* 76 Ind. L.J. 271, 279 (1991). One state law treatise urges that the "reasonable request" requirement contained in the Louisiana statutes (and similar to the WLLCL) be read to prohibit such inspection abuses. It warns that

635

without . . . [a] restrictive reading of the reasonable request requirement, even an LLC member who was starting up his own competing business would be entitled to copy his LLC's contracts, customer lists, and pricing calculations, as long as he was willing to do so with adequate notice and at a convenient time and place. Surely, this is not the result that the legislature would have expected had it considered the matter.

8 Glenn G. Morris and Wendell H. Holmes, *La. Civ. L. Treatise, Business Organizations* § 44.21 (1999).

¶ 66. We read the absence of "proper purpose" language in Wis. Stat. § 183.0405(2) to indicate the drafters of the WLLCL chose not to require LLC members to demonstrate, as a threshold matter, that their inspection request is not made for an improper motive. Moreover, this interpretation is in harmony with the intent of the WLLCL drafters to favor simple default rules suitable for "mom and pop" operations. However, this does not mean that the statute is blind to a member's motive for making an inspection request.

■■■

¶ 67. We conclude that a number of factors may be relevant to whether a request to inspect LLC records (or, here, "Company documents") was submitted "upon reasonable request." The scope of items subject to inspection under Wis. Stat. § 183.0405(2)— "any . . . record[s]," unless the operating agreement provides otherwise—is so broad that to permit any inspection request, no matter its breadth, could impose unreasonable burdens upon the operation of the company. Because we do not believe that the drafters intended the inspection statute to threaten the financial well being of the company, we read "upon reason-

able request" to pertain to the breadth of an inspection request, as well as the timing and form of the inspection.

¶ 68. We therefore conclude that one purpose of the language "upon reasonable request" is to protect the company from member inspection requests that impose undue financial burdens on the company.[18] Whether an inspection request is so burdensome as to be unreasonable requires balancing the statute's bias in favor of member access to records against the costs of the inspection to the company. When applying this balancing test, a number of factors may be relevant, including, but not limited to: (1) whether the request is restricted by date or subject matter; (2) the reason given (if any) for the request, and whether the request is related to that reason;[19] (3) the importance of the information to the member's interest in the company; and (4) whether the information may be obtained from another source.

---

[18] As noted, the statute requires that the member shoulder the costs of inspection. *See* Wis. Stat. § 183.0405(2) (providing a member may "inspect and copy" LLC records "at the member's own expense"). However, we observe that other costs, including labor and other indirect costs, may result from a member inspection request. Expenses incurred litigating an inspection request are not among those that may be factored into the reasonableness analysis.

[19] We note that while Wis. Stat. § 183.0405(2) does not require that a member's inspection request be made for a "proper purpose," the reason for the request may be a relevant factor in determining whether the request is reasonable under § 183.0405(2). Thus, a request that is made for an improper purpose may well be unreasonable. However, for a request to meet the reasonableness requirement, the requester need not always show that the request was submitted for a "proper purpose," or even give a reason for the request.

¶ 69. In the event that an LLC inspection request comes before a circuit court, the court within its discretion will take into account these purposes when determining whether an inspection request is reasonable under Wis. Stat. § 183.0405(2), provided the operating agreement does not require a different analysis. A circuit court's determination of the reasonableness of a member's request will depend on the circumstances of the case. Decisions of the circuit court regarding the reasonableness of an inspection request are addressed to its discretion.

E

¶ 70. Doral Dental contends that Marie's requests of July 2004 to inspect e-mails and draft documents were "unreasonably broad." The requests stated as follows:

17. For years 2001 to the present, e-mails by/to/from Greg Borca, Craig Kasten or Lisa Sweeney.

18. All internal correspondence between the officers and directors of Doral (e-mail, memo or correspondence) for the years 2001 to the present.

Doral Dental also argues that because Marie's actual requests were not limited to any stated concern, we should conclude that they were unreasonable under Wis. Stat. § 183.0405.

¶ 71. As noted, a member's inspection request need not necessarily be tied to a stated concern of the member to be reasonable. However, the question of whether a specific inspection request is reasonable under the WLLCL and the operating agreement is a question for the circuit court, applying the legal standards set forth above.

¶ 72. Additionally, the parties dispute whether servers and computer equipment formerly owned by Doral Dental and now in the possession of DQV may be subject to an inspection request under the WLLCL. Doral Dental contends that no provision of the WLLCL or the operating agreement permits members to inspect items now in the possession of third parties. Doral Dental states the circuit court made a finding of fact "that Doral sold the servers at issue" and that this finding was supported by a representation of Doral Dental's counsel in open court. Doral Dental asserts that the finding is also supported by the fact that Marie subpoenaed e-mails from DQV. Marie counters that a rule prohibiting member inspections when records are no longer in the possession of the company would result in companies simply selling or disposing of servers when they wished to avoid an inspection. She further states that the circuit court did not make a factual finding that the servers that were sold to DQV were the only source of the information she seeks.

¶ 73. We note that nothing in the WLLCL nor the operating agreement prevents Marie from seeking information contained on computer equipment now in the possession of a third party. That is what Marie did here, obtaining a subpoena to make electronic copies of computer hard drives and servers in DQV's possession.

¶ 74. Regardless, to the extent that these issues arise before this court as a result of the circuit court's order denying Doral Dental's motion for a protective order, they are not properly before us because Doral Dental has not filed a petition for cross-appeal seeking review of the order. *See* Wis. Stat. § (Rule) 809.10(2)(b) ("A respondent who seeks a modification . . . of another

judgment or order entered in the same action or proceeding shall file a notice of cross-appeal.").

¶ 75. Whether the information Marie seeks may be available on other electronic equipment not sold to DQV, and whether Doral Dental made a reasonable effort to discover such information on any such equipment are issues for the circuit court.

¶ 76. Additionally, Doral Dental objects to Marie's request to inspect e-mails on grounds that they may contain privileged medical information, noting that Doral Dental's business is developing systems to manage health care information. Marie responds that this argument is a red herring because the Health Insurance Portability and Accountability Act regulations already require that Doral Dental segregate such information. We cannot determine on the record before us whether Doral Dental's concern is well-founded, and leave for the circuit court to resolve this issue, if necessary, on a more fully developed record.

IV

¶ 77. In summary, we conclude that Doral Dental's operating agreement, which provides access to "Company documents" as well as "records," grants a right of inspection that embraces document drafts and some company e-mails. We therefore conclude that the circuit court's order denying inspection of company e-mails on grounds that they were, categorically, not "Company documents" was in error.

¶ 78. Additionally, we construe the language "upon reasonable request" included in Wis. Stat. § 183.0405(2) and the operating agreement to pertain to the financial burdens a request may place upon the company, as well as the timing and form of inspection.

We conclude that the reasonableness inquiry seeks to weigh the statute's bias in favor of the member's right of inspection against the burden the specific request may place upon the company.

¶ 79. We therefore reverse the circuit court's orders denying Marie Kasten's request to inspect e-mail and document drafts and dismissing her declaratory action on summary judgment. We remand this matter to the circuit court to reconsider Marie's request of July 2004 to inspect e-mails and document drafts in a manner consistent with this opinion.

*By the Court.*—The order of the circuit court is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 80. Justice N. PATRICK CROOKS took no part.