# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 15, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

**Appeal No. 2018AP684-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2015CF4666

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CHARLES MAURICE MERRIETT,

DEFENDANT-DEFENDANT.

APPEAL from a judgment of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ, Judge. *Affirmed*.

Before Brash, P.J., Kloppenburg and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Charles Maurice Merriett appeals a judgment convicting him of two drug charges and unlawfully possessing a firearm as a convicted felon. He argues that the seized evidence should be suppressed because the police unlawfully entered his apartment building's hallway. We affirm.

¶2 The police went to Merriett's apartment building after receiving a tip that he might be involved in selling drugs. The building has approximately thirty units with a foyer that is open to the public. In the foyer, the police saw Merriett's name on the mailbox for apartment 207. A person from inside the building let the officers into the locked portion of the building. The officers went to the second floor hallway, where they smelled a strong odor of marijuana in front of Merriett's door. The officers walked further down the hallway, but did not detect any other marijuana odor. The officers then obtained a search warrant to permit a trained dog to smell the area for drugs, leading to the eventual search of Merriett's apartment and seizure of evidence. Merriett moved to suppress, arguing that he had a reasonable expectation of privacy in the shared hallway and the police did not have valid consent to enter. The circuit court denied the motion. Merriett then pled guilty.

¶3 Merriett argues that the police did not have valid third-party consent to enter the hallway to his apartment. The Fourth Amendment prohibits the police from conducting a warrantless search absent certain carefully delineated exceptions. *See State v. Kieffer*, 217 Wis. 2d 531, 541, 577 N.W.2d 352 (1998). "One of those exceptions is valid third-party consent." *Id.* Whether a person has authority to consent to a search depends on the consenting person's "relationship to the premises to be searched." *State v. Guard*, 2012 WI App 8, ¶24, 338 Wis. 2d 385, 808 N.W.2d 718 (citation omitted). "Determining whether police had consent to enter is measured by an objective standard: would the facts available to

the officer" warrant a reasonable belief "that the consenting party had authority over the premises?" *Id.* (citation and internal quotation marks omitted). The State has the burden of showing valid third-party consent. *See Kieffer*, 217 Wis. 2d at 542.

¶4 At the suppression hearing, Officer Jeffrey Zientek was the only witness. He testified that he and another officer went into Merriett's apartment building and entered the unlocked foyer. Officer Zientek testified that the foyer was separated by a glass wall from the hallways leading to the apartments, a lower hallway leading to the first floor apartments and an upper hallway that led to the second floor apartments. He said that a man, whom he characterized as a maintenance person, noticed them and allowed them into the building by simultaneously buzzing the two locked doors that led from the foyer further into the building, with one door for each hallway. Officer Zientek said that after the man let them in, he asked them who they were. They identified themselves as police officers doing "follow-up" and asked for permission to enter, which the man gave them. Officer Zientek testified that he did not know the name of the man or have any additional information about him. Officer Zientek said that it was a "fluke" that the man happened to be standing there and let them into the hallway.

¶5 We conclude that the facts available to the officers when they entered the hallway to Merriett's apartment would lead a reasonable person to believe that the person letting them into the building had the authority to do so. *See Guard*, 338 Wis. 2d 385, ¶24 (third-party consent to search is constitutionally valid if the facts available to the officers would lead a reasonable person to believe that the consenting party had authority over the premises). The unidentified person who let the officers into the hallway had access to at least two different

3

secured doors in the building and came from inside the building. It was reasonable for the officers to infer that he had authority to give them permission to enter because he appeared to have access to the whole building. We conclude that the police properly entered the building based on the consent given to them by a third party who appeared to have authority to do so.

¶6 Merriett contends that a different result is dictated by *Kieffer*, in which the Wisconsin Supreme Court held that the defendant's father-in-law lacked apparent authority to allow the police to search a loft in his garage, which was the separate living quarters of his daughter and son-in-law. *See id.*, 217 Wis. 2d at 533-34. The supreme court reasoned that the police did not ask enough questions to determine whether the father-in-law, who did not have a key to the door of the loft, had the ability to access and use the loft on a regular basis. *Id.* at 550-51. Here, in contrast, the person who let the police into the building came from inside the locked building and had access to Merriett's hallway as well as other portions of the building. *Kieffer* is inapposite.

¶7 Merriett also contends that *Guard* requires a different result. In *Guard*, we held that police lacked sufficient information to support a reasonable belief that two women sitting on the front porch of a duplex had apparent authority to allow the police access to the upstairs apartment through a back hallway. *See id.*, 338 Wis. 2d 385, ¶29. The police told the women they were looking for a man named Anthony, whom the women did not appear to know. *See id.*, ¶2. One of the women told the officers: "You probably want the back door," and pointed back over her head saying, "it's around back. You can use the hallway there." *Id.* Unlike the situation here, in *Guard* the police did not know whether the women lived in the duplex, or had a key or other access to the back entrance of the duplex

to which one of the women had directed the officers, and thus had authority to give them permission to enter. *Guard*, too, is inapposite.[1]

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

---

[1] Because we conclude that the police had valid third-party consent to enter the hallway, we need not address Merriett's argument that he had a valid expectation of privacy in the hallway. *See Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 (cases should usually be decided on the narrowest possible ground).