COURT OF APPEALS
DECISION
DATED AND FILED

July 10, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2192-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF336

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

DAMIAN DARNELL WASHINGTON,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Sheboygan County:  REBECCA L. PERSICK, Judge.  *Affirmed in part, reversed in part and cause remanded for further proceedings*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Damian Darnell Washington appeals a judgment of conviction for multiple drug offenses and first-degree reckless homicide by delivery of fentanyl.  He also appeals an order denying his postconviction motion. He raises numerous issues on appeal, only a portion of which we need to address. We conclude the circuit court did not erroneously exercise its discretion when it found cause to extend the deadline for holding the preliminary hearing.  However, we conclude Washington received constitutionally ineffective assistance as a result of his attorney's handling of a potential trial witness whose testimony was ultimately excluded.   Accordingly, we reverse the judgment of conviction and remand for further proceedings.

## BACKGROUND

¶2      Colton Haase was found deceased in the Mead Public Library bathroom on May 3, 2019.  There were drugs and drug paraphernalia near his body.  Postmortem testing revealed fentanyl at a level more than seven times the therapeutic dose.  No heroin or heroin metabolites were found in Haase's tissues during postmortem testing.

¶3      While police were investigating Haase's death, they noted multiple incoming messages on his cell phone from Jessica Grande, with whom he was in a relationship.  When interviewed, Grande ultimately admitted that she had provided crack cocaine and heroin to Haase shortly before his body was found.  She said that she had sent Peter Bennett—whom Grande was also dating—to get the drugs from their dealer, Washington.  Grande told police that she had repackaged the drugs before selling them to Haase and that she planned to meet up with Haase later that afternoon.   When interviewed, Bennett ultimately stated he had

purchased drugs from Washington and had given some of the drugs to Grande to sell to Haase.

¶4 An Amended Information charged Washington with first-degree reckless homicide by delivery of fentanyl as well as numerous other drug offenses and bail jumping. Washington pled no contest to bail jumping, and a jury convicted Washington of the other offenses. The circuit court imposed an aggregate thirty-nine-year sentence.

¶5 Washington filed a postconviction motion. As relevant here, he argued his case should have been dismissed because the preliminary hearing was not held within ten days of the initial appearance pursuant to WIS. STAT. § 970.03(2) (2021-22).[1] Second, Washington argued the court erred by excluding the testimony of Maria Ramirez, who testified during an offer of proof that while she and Grande were incarcerated together in block 19, Grande had told her that she and Bennett had planned Haase's death and later set up Washington. Third, Washington located two additional inmate witnesses, both of whom testified that Bennett had admitted to them that he had lied about Washington's involvement. Finally, Washington argued his trial attorney was constitutionally ineffective in his handling of Ramirez's testimony and in failing to object or otherwise challenge the testimony of law enforcement officers regarding their opinions on the alignment of Grande's and Bennett's stories.

¶6 The circuit court denied the motion. It concluded that dismissal was inappropriate because there was good cause to delay the preliminary hearing,

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

namely that the State Public Defender (SPD) had been unsuccessful in appointing counsel. As to Ramirez, the court determined that even if it had erred in excluding her testimony based on her lack of personal knowledge, exclusion was still warranted because her testimony was cumulative and, in any event, any error in excluding the testimony was harmless. For the same reasons, the court rejected Washington's newly discovered evidence claim based on the new witnesses. Finally, the court determined Washington's trial counsel did not perform deficiently. Washington now appeals.

## DISCUSSION

¶7 Generally, Washington resurrects the claims advanced in his postconviction motion. Our resolution of the appeal requires that we address only a small number of the issues raised. First, we reject Washington's assertion that the circuit court lacked personal jurisdiction over him due to noncompliance with WIS. STAT. § 970.03(2). Second, we address Washington's ineffective assistance of counsel claim regarding Ramirez's testimony. Because we conclude he is entitled to a new trial on that ground, it is not necessary to address his remaining arguments. *See Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Issues that are not dispositive need not be addressed.").

### I. *Personal Jurisdiction*

¶8 Washington made his initial appearance on May 7, 2019. WISCONSIN STAT. § 970.03(2) required the preliminary hearing to be held within ten days, unless the time was extended on stipulation of the parties or on motion and for cause. The failure to hold a preliminary hearing within the prescribed time

results in a loss of personal jurisdiction, which requires dismissal without prejudice. *State v. Lee*, 2021 WI App 12, ¶61, 396 Wis. 2d 136, 955 N.W.2d 424.

¶9 Washington's preliminary hearing was not held until July 17, 2019, having been adjourned numerous times based upon delays in the SPD appointment process and conflicts of interests that required Washington's first two attorneys to withdraw. However, Washington appears to challenge only the adjournment that occurred between May 7 and May 31, 2019.

¶10 Washington's preliminary hearing was originally scheduled for May 14. At that hearing, the circuit court noted it had received a letter from the SPD requesting an adjournment to allow additional time to find counsel, which the court granted. At the next hearing on May 31, the court noted that counsel had been appointed for Washington, but the attorney had a conflict necessitating withdrawal. The matter was adjourned until June 5, 2019, for cause.

¶11 Washington contends this procedure violated *Lee* because the circuit court, in finding good cause at the May 14 hearing to extend the preliminary hearing deadline, relied only on the lack of SPD-appointed counsel and did not conduct a comprehensive examination of the reason for the adjournment, possible prejudice to the parties, and the public interest. *See Lee*, 396 Wis. 2d 136, ¶¶43, 51. We do not interpret *Lee* to have required such a searching inquiry only one week after the initial appearance.

¶12 Rather, *Lee* acknowledged that "difficulty in locating competent counsel to represent an indigent defendant can be a justifiable reason for extending the time limit for the preliminary hearing, especially early in the proceedings." *Id.*, ¶51. The breaking point in *Lee* appears to have occurred after the defendant was awaiting counsel for approximately two months, at which time the "need for

additional inquiries into the necessity of the delay, as well as consideration of the alternative mechanism for appointing counsel, should have been obvious." *Id.*, ¶52. *Lee* stands for the proposition that chronic delay—which does not include a delay of merely one or two weeks—cannot be justified solely by reference to the SPD's failure to appoint counsel. *See id.*, ¶59 ("The inquiry's level of thoroughness will be reflective of overall length of the delay in each case.").

¶13 Washington is not similarly situated to the defendant in *Lee*. Under the circumstances here, the circuit court did not violate WIS. STAT. § 970.03(2) by finding good cause to extend the preliminary hearing time limit to May 31 based solely on the lack of SPD-appointed counsel. Accordingly, the court did not erroneously exercise its discretion when adjourning the preliminary hearing on May 14. *See Lee*, 396 Wis. 2d 136, ¶59.

## II. Ineffective Assistance of Counsel

¶14 Washington argues he received constitutionally ineffective assistance in connection with his trial attorney's handling of Ramirez's anticipated testimony. To analyze this argument, we begin by setting forth the applicable legal standards. We then discuss the factual predicate for the argument, as well as the testimony at the *Machner* hearing.[2] We conclude Washington has demonstrated ineffective assistance of trial counsel relating to Ramirez's proffered testimony.

¶15 The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951

---

[2] *See State v. Machner*, 92 Wis. 2d 797, 799, 285 N.W.2d 905 (Ct. App. 1979).

6

N.W.2d 838. We review an ineffective assistance of counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.*

¶16 To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.*; *see also* ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). If the defendant fails to establish either prong, we need not address the other. ***Savage***, 395 Wis. 2d 1, ¶25.

¶17 To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

¶18 Washington's ineffective assistance claim involves Ramirez's testimony, which was discovered by the defense mid-trial.[3] The circuit court

---

[3] Washington's brief-in-chief contains mostly citations to the appendix, which practice does not conform to WIS. STAT. RULE 809.19(1)(e). We remind counsel of the obligation to include accurate citations to the appellate record where appropriate. "We have no duty to scour the record to review arguments unaccompanied by adequate record citation." ***Roy v. St. Lukes Med. Ctr.***, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256.

stated it was familiar with Ramirez and knew she previously had some mental health issues. The court provided time for the defense investigator to speak with Ramirez, then it permitted Ramirez to testify outside the jury's presence in the form of an offer of proof before deciding whether her testimony was admissible.

¶19 Ramirez testified that she had met Washington two days before while they were incarcerated together. A "couple months" prior to meeting Washington, Ramirez stated she had been housed in block 19 with Grande. Ramirez testified that while they were housed together, Grande had shown Ramirez some discovery from her case and had told Ramirez that she and Bennett planned to kill Haase because of their romantic entanglement. Grande told Ramirez that Bennett had received the drugs from a friend, but after Haase's death, they "freaked out" and set up Washington to take the blame. Upon meeting Washington, Ramirez realized he was the person Grande had admitted to setting up.

¶20 During argument, the prosecutor expressed skepticism that Grande and Ramirez had ever been confined together during the time period in question. The circuit court granted a brief recess to allow the prosecutor to gather jail records to determine whether they were ever housed together. After the break, Sergeant Mark Richter testified that based upon his review of the housing records for Ramirez and Grande, the two were never placed together after May 3, 2019, except for a brief time when they occupied their own cells in receiving.

¶21 The court, in follow-up questioning, specifically asked Richter to confirm that Ramirez and Grande were never in block 19 together, which Richter did. The court excluded Ramirez's testimony on that basis, remarking, "It's clear from the uncontroverted facts based on records that are regularly maintained that

the testimony that Ms. Ramirez gave cannot be factually accurate and is not factually accurate."

¶22    In fact, it was Richter, not Ramirez, who was mistaken. As Richter acknowledged during postconviction proceedings, the relevant inmate records showed that Grande and Ramirez were housed together on block 19 between September 15 and September 20, 2019. Washington's trial counsel testified during the *Machner* hearing that he found the inmate housing records "rather difficult to decipher." He therefore had relied on the State's representation that the records reflected that Ramirez and Grande had not been housed together.

¶23    We agree with Washington that his trial attorney performed deficiently by failing to conduct a more through review of the inmate housing records. The records—which log the entry date, release date, and location of the inmate—are not so esoteric or complex that a reasonably competent attorney would have had difficulty understanding them. A few more minutes spent trying to understand the line entries likely would have revealed Richter's error. Alternatively, Washington's counsel could have asked Richter questions about the records to clear up any confusion. What he could not do—and what was objectively unreasonable—was to simply assume that the records showed what Richter and the State claimed. *See State v. Mader*, 2023 WI App 35, ¶29, 408 Wis. 2d 632, 993 N.W.2d 761, *review denied*, 2024 WI 4, 5 N.W.3d 601 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

¶24    Washington has also demonstrated a reasonable probability of a different outcome had Ramirez's testimony been admitted. Grande's and

9

Bennett's credibility were key to the prosecution against Washington. Ramirez's testimony, if believed, would have cast Grande and Bennett in a much different light, providing a motive not only for them to falsely implicate Washington, but also suggesting that Grande and Bennet themselves were responsible for Haase's death. In the context of the other evidence at trial, Ramirez's testimony could have permitted the jury to conclude that it was not Washington's drugs that killed Haase. At a minimum, the absence of her testimony undermines our confidence in the outcome of the trial.

### III. Remaining Appellate Arguments

¶25 Having concluded that Washington is entitled to a new trial, we have no need to reach the additional issues he raises. *See **Maryland Arms Ltd. P'ship v. Connell***, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Issues that are not dispositive need not be addressed."). In particular, we decline to reach the following issues raised in Washington's brief: (1) whether the trial evidence demonstrated a lack of "probable cause" to believe Washington committed the charged offenses;[4] (2) whether the circuit court otherwise erroneously exercised its discretion when it excluded Ramirez's testimony; (3) whether the prosecutor committed misconduct during Richter's testimony; (4) whether Washington's new witnesses necessitate a new trial based on newly discovered evidence; and (5) whether Washington's trial attorney was constitutionally ineffective for failing to object to certain testimony regarding the truthfulness of other witnesses.

---

[4] To the extent Washington attempts to raise a sufficiency-of-the-evidence argument, the State ably describes why we would reject any such argument.

*By the Court.*—Judgment and order affirmed in part, reversed in part and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.